UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Huff, Judges Petty and McCullough
Argued by teleconference

RANDY LEE WYANT

MEMORANDUM OPINION* BY
v.        Record No. 0726-14-3        JUDGE WILLIAM G. PETTY
MARCH 31, 2015

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
Victor V. Ludwig, Judge

Duane Barron, Deputy Public Defender (Office of the Public
Defender, on brief), for appellant.

Victoria Johnson, Assistant Attorney General (Mark R. Herring,
Attorney General; Elizabeth C. Kiernan, Assistant Attorney General,
on brief), for appellee.

Randy Lee Wyant was convicted of violating a preliminary protective order pursuant to

Code § 16.1-253.2.  On appeal, Wyant argues that the trial court erred in finding the evidence

sufficient to establish that Wyant made contact with the victim in violation of the protective

order.  For the reasons stated below, we disagree and affirm the judgment of the trial court.

I.

Because the parties are fully conversant with the record in this case and this

memorandum opinion carries no precedential value, we recite only those facts and incidents of

the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting

to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth, 26

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).

II.

Wyant argues that the trial court applied an erroneous definition of the word "contact" and erred in finding the evidence sufficient to convict him of violating the preliminary protective order because he did not make "contact" with the victim within any reasonable definition of the word.

Code § 16.1-279.1(A)(2) provides that, upon a finding of abuse, a protective order may prohibit "such contacts by the respondent with the petitioner or family or household members of the petitioner as the court deems necessary for the health or safety of such persons." On January 24, 2014, a preliminary protective order was issued against Wyant under Code § 16.1-279.1(A)(2). Here, the preliminary protective order directed that "[t]he Respondent shall not commit acts of family abuse or criminal offenses that result in injury to person or property" and that "[t]he Respondent shall have *no contact of any kind* with petitioner." (Emphasis added). Further, the order granted possession of the residence at 115 Thorofare Road to petitioner and ordered that "[t]he Respondent shall immediately leave and stay away from the residence."

First, Wyant argues that the trial judge's comment "if you can see her, if you can smell her, if you can hear her, you're too close" demonstrates that the judge applied an incorrect definition of "contact." The definition of "contact" under Code § 16.1-279.1 is "'[a]n issue of statutory interpretation'" which "'is a pure question of law which we review *de novo*.'" Sarafin v. Commonwealth, 62 Va. App. 385, 394, 748 S.E.2d 641, 645 (2013) (quoting Scott v. Commonwealth, 58 Va. App. 35, 48, 707 S.E.2d 17, 24 (2011)). This Court is bound by Elliott v. Commonwealth, 277 Va. 457, 675 S.E.2d 178 (2009), in which the Supreme Court defined "contacts" under Code § 16.1-279.1 as "those acts by the respondent that intentionally pierce the

protective barrier between the petitioner and respondent fashioned by the protective order." Id. at 464, 675 S.E.2d at 182. The Court held that while Code § 16.1-279.1(A)(2) does not explicitly define which "contacts" a protective order may prohibit, "in essence, the statute permits the court to fashion protective orders that create a persistent barrier between the petitioner and the respondent so as to reasonably ensure the health and physical safety of the petitioner." Id. at 463, 675 S.E.2d at 182. Further, the Court found that "the statute permits a protective order that prohibits the respondent from entering a reasonable distance-defined space around the petitioner and, thus, intentionally making visual contact with the petitioner." Id. at 464, 675 S.E.2d at 182.

Wyant argues that the judge applied a broader definition of contact than the definition from Elliott by using his "rule of thumb" that "if you can see her, if you can smell her, if you can hear her, you're too close." However, "in Virginia, 'we presume [trial] judges know the law and correctly apply it.'" White v. White, 56 Va. App. 214, 218, 692 S.E.2d 289, 291 (2010) (quoting de Haan v. de Haan, 54 Va. App. 428, 445, 680 S.E.2d 297, 306 (2009)). "An appellant can rebut the presumption by showing, either by the ruling itself or the reasoning underlying it, the trial judge misunderstood the governing legal principles. We are particularly skeptical, however, of appellate efforts to piece together such a conclusion from fragmented remarks from the bench." Id. Moreover, it is improper to "fix upon isolated statements of the trial judge taken out of the full context in which they were made, and use them as a predicate for holding the law has been misapplied." Damon v. York, 54 Va. App. 544, 555, 680 S.E.2d 354, 360 (2009) (internal quotation marks omitted).

Here, in finding Wyant guilty, the judge also stated,

> the person who is theoretically protected by the order is subject to
> the person against whom the order is issued, sneaking around or
> even quite overtly showing himself around the house, taking

photographs. That's the kind of conduct that—that protective orders are designed to prevent. . . . [I]f this isn't a case where knowing he's not supposed to have any contact with her he goes to her house and photographs her house from two different direction, I'm—I mean, that's about as clear a—well, it isn't the worst case, but it is a clear case of violation of protective order and so I find him guilty.

Thus, viewed in context, the trial judge's remark that "if you can see her, if you can smell her, if you can hear her, you're too close" does not indicate that the judge applied an incorrect definition of "contact." Rather, the trial judge's other comments and ultimate holding reflect that he applied the proper definition of the term "contact" from Elliott—"those acts by the respondent that intentionally pierce the protective barrier between the petitioner and respondent fashioned by the protective order." 277 Va. at 464, 675 S.E.2d at 182. Finally, because we review the meaning of contact *de novo*, we would not be bound by the trial court's "rule of thumb," even if erroneous.

Wyant's second argument is that the evidence was insufficient to prove that he "contacted" the victim within the proper definition of the term because he was not on the victim's property and did not intend to communicate with her. In a challenge to the sufficiency of the evidence, we must "'examine the evidence that supports the conviction and allow the conviction to stand unless it is plainly wrong or without evidence to support it.'" Commonwealth v. McNeal, 282 Va. 16, 20, 710 S.E.2d 733, 735 (2011) (quoting Vincent v. Commonwealth, 276 Va. 648, 652, 668 S.E.2d 137, 139-40 (2008)). We review the evidence in the light most favorable to the Commonwealth, as the prevailing party below, and determine whether "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). "'This familiar standard gives full play to the responsibility of the trier of fact . . . to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate

facts.'" Brown v. Commonwealth, 56 Va. App. 178, 185, 692 S.E.2d 271, 274 (2010) (quoting Jackson, 443 U.S. at 319). "Thus, the fact-finder has the sole responsibility of determining the credibility of the witnesses." Mayfield v. Commonwealth, 59 Va. App. 839, 851, 722 S.E.2d 689, 695 (2012).

Wyant again relies on Elliott, in which the Supreme Court held that the evidence was insufficient to establish that a defendant who stood a block away from the victim's home contacted the victim in violation of a protective order prohibiting "contact of any type." 277 Va. at 464, 675 S.E.2d at 182. The Court held that even though the defendant may have intentionally placed himself where he was visible to the victim, his actions did not constitute "contacts" in violation of the protective order because he posed no threat to the victim's health and safety while standing a block away from her home. Id.

Here, the evidence established that Wyant stood much closer to the victim's home than the defendant in Elliott. On February 4, 2014, Wyant drove to the victim's home and parked his car on the street in front of the neighbor's house. Despite the protective order's admonition that he "leave and stay away from the [victim's] residence," Wyant walked up the neighbor's driveway and over to a tree on the victim's property line. There was no fence or other physical boundary separating the neighbor's property from the victim's property. Wyant began taking pictures from his location by the tree. The victim was looking out her back door at the time. She estimated that Wyant was only fifty feet from her back door. "Resolution of this appeal does not require this Court to specify the bounds of "contacts" as proscribed by Code § 16.1-279.1, and we decline to do so." Elliott, 277 Va. at 464, 675 S.E.2d at 182. We simply decide that under the circumstances of this case there was sufficient evidence for the trial court to conclude that Wyant's proximity to the home posed a threat to the victim's mental and physical health and her safety.

Wyant also argues that his actions were not an intentional violation of the protective order because he did not know if the victim was at home when he was standing in the neighbor's yard taking photos. Wyant testified that he was taking photos of the cars in the victim's driveway for use at the upcoming February 7 hearing on whether to make the protective order permanent. Wyant claimed that he did not take photos of the victim's home. He testified that he did not see the victim's son get on the school bus and did not see the victim standing near her back door. The trial court was entitled to weigh Wyant's testimony against the evidence that Wyant saw the victim's car in the driveway, saw her son get on the school bus, and then saw her looking out the back door. Additionally, Wyant admitted that he never used the photos he took at his hearing, and the trial court could reasonably conclude that his explanation for being at the neighbor's home was merely a pretext. From the evidence presented, the trial court could reasonably infer that Wyant knew the victim was home and intended to visually communicate with the victim in a manner that "intentionally pierce[d] the protective barrier between the petitioner and respondent fashioned by the protective order." Id.

Accordingly, the evidence was sufficient to establish that Wyant made "contact" with the victim in violation of the protective order.

### III.

For the foregoing reasons, we affirm Wyant's conviction.

Affirmed.